UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL G. SMITH, | ) | Case No.  1:07 CV 2661 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Daniel G. Smith filed this appeal seeking judicial reversal under 42 U.S.C. §1383(c)(3) from the administrative denial of supplemental security income benefits.  At issue is the ALJ's decision dated March 31, 2006, which stands as the final decision of the Commissioner.  See 20 C.F.R. §404.1481.  The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The ALJ found that Smith is a younger individual, age 43, with eight years of education and no relevant past work experience, who suffers from the severe impairments of knee replacement, back pain and left shoulder rotator cuff tear (Tr.14,19,20). The ALJ discredited and rejected: (1), complaints of pain, and implicitly the diagnosis of reflex sympathetic dystrophy (Tr. 166, 180); (2), the medical diagnosis of "severe" mental impairment from Dr. Leventhal (Tr. 147- 54); (3) reports from the state agency reviewing psychologists concerning the degree of mental impairment (Tr. 325-342); and (4) the opinions of disability due to chronic pain from Smith's treating physician, Dr.

Young (Tr. 343, 359). After rejecting much of the evidence in the record, the ALJ found that Smith could perform sedentary work with no overhead reaching.(Tr. 18-19). Based on testimony from the vocational expert who appeared at the administrative hearing, the ALJ determined that Smith was not disabled since he was capable of such jobs as order clerk and inspector (Tr. 20).

Smith challenges the Commissioner's decision contending :

1. THE OPINIONS OF TREATING AND EXAMINING PHYSICIANS, WHICH SUPPORT A FINDING OF DISABILITY, WERE GIVEN INSUFFICIENT WEIGHT BY THE ALJ IN HIS ANALYSIS OF PLAINTIFF'S DISABILITY.

2. THE ALJ ERRED IN HIS FINDING THAT SMITH DOES NOT SUFFER FROM A SEVERE MENTAL IMPAIRMENT.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The requisite analysis at the final stages of administrative review is known as the five-step sequential evaluation process. This evaluation begins with the question whether the claimant is

engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4) (I) and (ii) and §416.920(a)(4) (I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987).Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

4

*Medical opinion of physical disability based on subjective pain* :

Smith hurt his back in a roll-over truck accident in May 1999 (Tr. 238, 293). X-rays showed mild disc bulging in the lower back (Tr. 293). In February 2004, Smith went to the emergency room complaining of having pain in his right knee for six months (Tr. 142). X-rays showed extensive degenerative change, large spurs, and narrowing over the joint (Tr. 134, 144, 301-02, 313-14). The doctor concluded that he probably needed a knee replacement operation (Tr. 138). On March 5, 2004, Dr. Moore, an orthopedic surgeon, examined Mr. Smith, and recommended a total knee replacement (Tr. 279). Dr. Young performed a pre-operative examination on March 10, 2004, and noted that Mr. Smith also had a sprained rotator cuff, general osteoarthritis, chronic lower back pain from bulging discs, and anxiety (Tr. 263-66, 276-77). A physical examination showed that the muscles along his spine were tender to the touch, and he had limited overhead movement (Tr. 264, 277). Smith's right knee was replaced surgically on April 5, 2004 (Tr. 235-37, 241). Smith had problems with pain control after his surgery, requiring high doses of narcotics (Tr. 231-33), and he had post-operative swelling in the leg (Tr. 231-32, 250, 253-54). Smith continued to receive treatment for his pain claiming no significant improvement.

Dr. Moore discussed Smith's situation with Smith's treating physician, Dr. Young, in July 2004 (Tr. 180). Dr. Moore found right knee erythema and his diagnoses were reflex sympathetic dystrophy /complex regional pain of the right leg, and osteoarthritis of the right leg status post total

knee replacement (Tr. 180). Vicodin was prescribed and Smith was encouraged to keep his pain management appointment.

Dr. Dews from the Cleveland Clinic's pain management program reported on August 30, 2004, that Smith did not agree with the recommended tunneled epidural catheter with aggressive physical therapy and sought her second opinion (Tr. 165). Smith complained of severe pain with walking and activity which was relieved to some extent with oral medication. Dr. Dews' examination revealed right knee edema, hyperesthesia, pressure, allodynia. Erythema was not present at that time but the right calf was "somewhat" atrophic. (Tr. 166.). Dr. Dews confirmed reflex sympathetic dystrophy and prescribed medications in addition to Vicodin. Dr. Dews considered nerve blocks as a last resort, but a nerve block had been previously administered with minimal relief reported (Tr. 166, 167).

In December 2004, Smith's treating physician issued a residual functional capacity assessment finding Smith could not perform lifting or carrying because of his use of cane or crutches, that Smith could not stand or walk due to chronic pain status post right knee replacement, that Smith' sitting capacity was unknown, but Smith could sit for one hour with no need to keep his leg elevated and needed to frequently adjust position (Tr. 343). Smith further could not climb, balance, stoop, crouch, kneel or crawl, nor reach, handle, feel, push or pull, or perform gross manipulation (Tr. 344). Smith also required the assistance of cane, brace and TENs unit.

6

One year later in December 2005, Dr. Young issued a second residual functional capacity adding that Smith could sit 4 hours in a workday at intervals up to one hour with the need to move around and shift to alleviate pain. (Tr. 359). Again there was no standing, walking, lifting, or carrying. However, Smith regained the abilities to occasionally reach, frequently handle and feel, and to occasionally perform gross manipulation. (Tr. 360). Also the TENs unit was no longer prescribed. Smith argues that Dr Young as treating physician has identified limitations which preclude work activity and the only opinion which contradicts his opinion is that of a non-examining Social Security physician (Tr. 319 - 324).

The ALJ found these opinions merited "little credit." (Tr. 15). The ALJ supported his finding with the opinion from the state agency physician, the conclusory nature of the opinions, the lack of "objective evidence of record," and that these restrictions exceeded even Smith's claims. Dr. Young credited Smith's complaints of pain, whereas the residual functional capacity assessment from the state agency physician limited Smith to light lifting and carrying but with only 2-hours of standing or walking due to the objective findings in the medical history (Tr. 320).

As *Wilson v. Commissioner* instructs, the ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). The regulatory scheme under §404.1527(d)(2) and its SSI counterpart

§416.927(d)(2), require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §404.1527(b) and §416.927(b). The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

This case presents a situation where the treating physician's opinions of disability are based on acceptance of largely subjective complaints of pain and evaluation of the alleged pain goes hand-in-hand with weighing the treating physician's opinion. See *Vance v. Commissioner of Social Sec.,* 260 Fed.Appx. 801, 805, 2008 WL 162942, 4 (6th Cir. 2008)(The ALJ found that activities of daily living were inconsistent with the opinion of disability and level of pain and fatigue alleged.); *Hall v. Commissioner of Social Sec.*, 148 Fed.Appx. 456, 462, 2005 WL 2139890, 6 (6th Cir. 2005) ("Dr. Caudill was most familiar with the pain Hall experienced because of his back."). In effect the matter distills to an issue of credibility. This should come as no surprise since the ALJ is required to consider "treatment" and the factors for assessing credibility include, "[t]reatment, other than

medication claimant has received for relief of pain," and "[t]he type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms[.]" 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). So convergence of the proper weight to give the treating physician's opinion and assessment of Smith's credibility is inevitable in this matter.

*Credibility:*

Smith has been diagnosed with reflex sympathetic dystrophy (RSDS) (also known as Complex Regional Pain Syndrome (CRPS)):

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.
>
> Social Security Ruling (SSR) 03-2p, 2003 WL 22399117 at * 1

SSR 03-2p is devoted to explaining the criteria, symptoms, and treatment of RSD, and how an ALJ may determine whether a claimant's RSDS is a properly documented, medically determinable impairment. The ruling instructs that administrative review of pain be conducted under SSR 96-7p and SSR 96-8p.[1] The fact that the ALJ failed to expressly identify SSR 03-02p,

---

[1] In pertinent part SSR 03-2p reads:

For those cases in which the individual's impairment(s) does not meet or equal the listings, an assessment of RFC must be made, and adjudication must proceed to the fourth and, if necessary, the

is not critical since the degree of pain still must be ascertained under SSR 96-7p and SSR 96-8p (See note 1).

The facts are that the ALJ acknowledged the RSDS diagnosis (Tr. 16), but found Smith's allegations not credible (Tr. 18). Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ acknowledged SSR 96-7p and concluded that Smith was limited to sedentary work with no overhead reaching. The basis for this decision was that: Smith had sufficiently recovered from his knee replacement so as to allow for performance of sedentary work; the record did not

---

fifth step of the sequential evaluation process. Again, in determining RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities. Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. See SSR 96-7p, "Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements" and SSR 96-8p, "Titles II and XVI: "Assessing Residual Functional Capacity in Initial Claims." 2003 WL 22399117 at * 7

10

document ongoing symptoms or clinical or laboratory abnormalities incompatible with this residual functional assessment for sedentary work; Smith did not require a walker and was not prescribed crutches for any continuous period of at least 12 months; there was no instability or neurological compromise; and, Smith admitted some relief from pain medication. (Tr. 18).  The ALJ did provide specific reasons as required by  SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.  However, these did not match any of the  categories recognized under the Social Security Rulings or 20 C.F.R. §416.929(c).

The format set forth in SSR 96-7p outlines that administrative evaluation process beginning with traditional two-prong *Duncan*  pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong  pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment. There was, Smith's injured right knee and the subsequent knee replacement.  This is followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2.

The regulatory considerations that follow to investigate subjective complaints of pain or other symptoms consist of:

    1.    The claimant's daily activities;

11

    2.       The location, duration, frequency, and intensity of pain;

    3.       Precipitating and aggravating factors;

    4.       The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

    5.       Treatment, other than medication claimant has received for relief of pain; and

    6.       Any other measures used to relieve pain (e.g. lying down or changing position).

    7.       Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

The ALJ, contrary to SSR 03-2p and the pain rulings/ regulation analysis focused on the point that the degree of pain reported was out of proportion to the severity of the injury sustained. This rationale failed to fulfill the requirements and purposes of the regulation to consider subjective pain based on treatment and admitted capabilities. Essentially the ALJ's reasoning was circuitous and selective, and the ALJ did not examine Smith's daily activities, the duration, trequency and intensity of pain, its precipitating and aggravating factors, the effectiveness of medication, other treatment received as in pain management clinics, and functional limitations other than whether Smith required a walker. Accordingly, the ALJ's examination of the record to weigh and reject Dr. Young's opinion of physical disability due to chronic pain was woefully inadequate when the ALJ neglected to thoroughly analyze the evidence of subjective pain. Consequently, the ALJ failed to

articulate "good reason" for rejecting Dr. Young's opinion of disability mandating reversal and remand for proper consideration.

*ALJ's rejection of severe mental impairment:*

Smith has not received treatment from a psychologist or psychiatrist, but his physicians noted depression and anxiety and prescribed Zoloft (Tr. 159, 161 - 162, 175, 188, 265, 396). Dr. Leventhal, evaluated Mr. Smith consultatively in May 2004 at the behest of the state agency and diagnosed major depressive disorder, recurrent, moderate, alcohol dependence in sustained remission and cocaine dependence in early full remission. (Tr. 147-154). Smith claimed he suffered from depression, may have had bi-polar disorder, and has had prior hospitalizations for his depression (Tr. 148). The doctor found serious restriction of functioning and assigned a global assessment of functioning score (GAF) of 48. (Tr. 154). Dr. Leventhal concluded, as a result of his evaluation, that Mr. Smith is markedly impaired in the ability to relate to others; understand, remember and follow instructions; maintain attention, concentration, persistence and pace; and in the ability to withstand stress and pressure (Tr. 154). This opinion would support a finding of disability. However, the record was given to non-examining state agency psychologists who found based on the consultative examination that Smith had " moderate," not "marked" limitations (Tr. 325- 42).

The ALJ rejected all psychological opinion to find that Smith had no severe mental impairment. (Tr. 16-17).  The ALJ reasoned that Smith had not undergone any mental health

13

treatment, did not allege that he has bi-polar disorder, all contrary to the statements Smith made to Dr. Leventhal. Further, the ALJ found that Dr. Leventhal's opinion merely accepted Smith's statements, and the doctor's clinical evaluation demonstrated no abnormalities consistent with very severe mental impairment. For example, the doctor's findings were that Smith exhibited sad mood, mild to moderate limitations in short-term memory, normal digit span, moderate impairment in concentrating on tasks, mild impairment of mental computation, and moderate impairment in fund of knowledge. Dr. Leventhal also considered allegations of pain in the toes, groin, and stomach, which are found nowhere else in the record. Finally with respect to purported limitations which were secondary to pain, the ALJ criticized Dr. Leventhal for not stating the duration of this impairment in his May 2004 opinion, which was only one month after Smith's knee replacement.

The rejection of Dr. Leventhal's opinion was supported by substantial evidence. First, Smith was exaggerating or "faking bad" for the psychologist which can be reasonably perceived as intent to deceive. See *Williamson v. Secretary of Health & Human Servs.*, 796 F.2d 146, 149-50 (6th Cir. 1986). Second, what evidence the doctor relied upon did not reasonably account for his conclusions. The ALJ considered the extent of examination; and testing, which are proper factors. See 20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii). The ALJ did not err by dismissing Dr. Leventhal's opinion merely due to a lack of objective evidence. Compare *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)( [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology."). The clinical data demonstrated only mild to moderate degrees of impairment,

14

yet Dr. Leventhal inexplicably concluded that Smith had "marked" impairment in several of the functional areas. Finally and very significantly, Dr. Leventhal's opinion as a consultative psychologist hired by the state agency to examine Smith on one occasion was not entitled to the level of deference accorded to opinions from treating physicians. See *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

This leads to the next series of issues involving the ALJ's rejection of the mental residual functional capacity assessment from the non-examining state agency psychologists and the finding of non-severe mental impairment. The primary reason for the ALJ's rejection of these reports was that they were products of Dr. Leventhal's consultative examination.(Tr.17, 328). The ALJ found these reports carried through Smith's deception of Dr. Leventhal, that Smith had in fact not undergone mental health treatment, and that the notes from other physicians did not relate any sustained symptoms or treatment. (Tr. 17, 18). These are all proper considerations under 20 C.F.R. §416.927(d). Accordingly, the rejection of the evidence of mental impairment was supported by substantial evidence, notwithstanding Smith's arguments about the *de minimis* nature of "severe" impairment for purposes of  20 C.F.R. §416.920. Compare *Mowery v. Heckler*, 771 F.2d 966, 972 (6th Cir. 1985); *Farris v. Secretary*, 773 F.2d 85, 90 (6th Cir. 1985)( If the impairment has more than a *de minimis* effect on residual functional capacity, it is "severe.").

## *CONCLUSION*

"Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings")." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) denying disability insurance benefits and supplemental security income be affirmed as supported by substantial evidence.

Smith's arguments have persuaded the Court that the determination denying him supplemental security income was not supported by substantial evidence with respect to the rejection of the treating physician's opinion of disability based on chronic pain and related to the rejection of Smith's credibility with respect to his allegations of disabling pain. However, the determination was supported by substantial evidence with respect to the conclusion that Smith does not suffer from a severe mental impairment.  Based on the arguments presented, the record in this matter and the applicable law, the Commissioner's determination is reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for reevaluation of the opinions of disability from the treating physician and alleged disabling pain in accordance with the applicable regulations and Social Security Rulings.

                                                          s/James S. Gallas

16

United States Magistrate Judge